Colón, Plaintiff and Appellee, *v.* Heirs of Batista, Defendants and Appellants.

Appeal from the District Court of San Juan in an Action of Filiation.

No. 2220.—Decided May 17, 1921.

Discretion of Court.—The evidence recited in the opinion in this action of filiation, annulment of divorce and designation of heirs leads to a conclusion that the district court did not abuse its discretion in weighing the same.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for the appellants.

*Messrs. L. Muñoz Morales, M. Muñoz* and *G. Darder* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

This is an appeal by the defendants from a judgment of the District Court of San Juan, Section 1, as follows:

"First: The action for divorce prosecuted in this district court under number 411 by José Manuel Batista against Paula Rodríguez is null and void and without any effect.

"Second: María Gil and Petronila Colón are the acknowledged natural children of José Manuel Batista according to sections 187 and 189 of the Civil Code before they were amended by the Act of March 9, 1911, and according to sections 193 and 194 of the Civil Code as amended by the said Act.

"Third: María Gil and Petronila Colón, whose correct names are Batista y Colón, have the right to bear the name of their father, José Manuel Batista, and to their legal portions of his estate according to section 195 of the Civil Code and sections 1 and 14 of the Act of March 9, 1905, amending sections 795, 796, 797, 801, 811, 812, 815, 821, 822, 823 and 824 of the Civil Code.

"Fourth: The designation of heirs contained in the will made by José Manuel Batista on November 14, 1917, and admitted to probate by this court on January 14, 1918, is null and void and

the bequests therein made are lawfully valid in so far as they are not inofficious.

"And the defendants are charged with the costs."

In their brief the appellants have assigned various errors of fact and some of law as committed by the lower court in the judgment appealed from, but neither in their lengthy brief nor in their oral argument do they argue the alleged errors of law. They argue only the errors of fact assigned and for that reason we shall consider only these.

The facts of the case, the findings made by the trial court and the grounds of its decision in adjusting the conflict in the evidence are so clearly set forth in the opinion written by Judge Jacinto Texidor in support of his judgment that we shall quote from it freely on those points. It is as follows:

"Providencia Colón, the mother of the minors María Gil and Petronila Colón with the right of *patria potestas,* brought an action against the heirs of José Manuel Batista, composed of his widow, Julia Durán, and their child Manuel Batista Durán. The plaintiff prayed the court for a judgment as follows:

"A. That María Gil and Petronila Colón are the acknowledged natural children of José Manuel Batista with a right to bear his name and to share in his estate.

"B. That the action for divorce prosecuted in this court by José Manuel Batista against Paula Rodríguez, civil action No. 411, and the judgment recovered therein are null and void.

"C. That the designation of heirs made by José Manuel Batista in his will of November 14, 1917, in favor of his legitimated son Manuel Batista Durán is null and void.

"The material allegations of the complaint may be summarized as follows:

"The plaintiff alleges that she is the mother with *patria potestas* of María Gil and Petronila Colón, fifteen and twelve years of age respectively.

"She likewise alleges that the heirs of José Manuel Batista are his widow, Julia Durán Aquino, and his son, Manuel Batista Durán. This allegation was admitted by the defendants.

"That José Manuel Batista married Paula Rodríguez in 1870. This allegation was also admitted.

"That Paula Rodríguez was drowned by the flood in Utuado during the hurricane of August 8, 1899.

"That during the years 1900 to 1907 José Manuel Batista, a widower, had illicit relations with plaintiff Providencia Colón, who was single; that at that time both were capacitated to marry; that from such illicit and amorous relations María Gil was born on January 24, 1903, and Petronila on December 18, 1906; that at their birth and continuously thereafter these children were considered by José Manuel Batista as his natural children and he called them so and provided for their maintenance and support, treating them publicly as his children and continuing to do so until the hour of his death.

"That in November of 1917 Batista married Julia Durán, who bore him the child called Manuel. This allegation was admitted.

"That Batista died in Cataño on January 2, 1918. This allegation was also admitted.

"That defendants Julia Durán and her son refuse to recognize María Gil and Petronila as natural children of Batista. The defendants admit that they refuse to recognize them as such and allege that they do so because these children are not the children of Batista and were never acknowledged by him as such.

"The plaintiff also, alleges that in 1905 José Manuel Batista attempted to bring proceedings in the Municipal Court of Utuado to prove that his wife, Paula Rodríguez, had died by drowning during the hurricane of August 8, 1899; that in the same year, knowing that his wife, Paula Rodríguez, had died in 1899, he brought an action for divorce against her in the District Court of San Juan; that by the false allegation that his wife, Paula Rodríguez, was alive and on the testimony of witnesses who falsely testified to that effect he obtained from the court a judgment on January 2, 1906, dissolving the marriage bond which was already dissolved by the death of the wife, and that in any event the judgment recovered in that action was null and void because the court had no jurisdiction, inasmuch as the defendant was not personally summoned, the summons was not returned, nor was it moved or ordered by the court to serve the summons by publication.

"Finally the plaintiff alleges that José Manuel Batista died after making a closed will on November 14, 1917, which was admitted to

probate by this court on January 14, 1918, and that in that will Batista did not designate as his heirs his daughters Petronila and María Gil, but did so designate his legitimated son Manuel Batista Durán, who, together with the widow, Julia Durán, are now in possession of his estate. The defendants admitted the existence of the will and that the said María Gil and Petronila were not named as heirs therein, but allege that they are not such natural children of the testator.

"In their answer and apart from the admissions already mentioned the defendants alleged:

"A. They deny the allegations of the first count, or that of filiation, and further allege that the plaintiffs have no cause of action for filiation because they were conceived and born during the wedlock of José Manuel Batista with Paula Rodríguez.

"B. As to the second count, they deny the special allegations thereof relative to the action for divorce and as regards the falsity of the allegation of Batista and of the evidence and the lack of jurisdiction of the court. And they allege as new matter that when Paula Rodríguez separated from José Manuel Batista she contracted amorous relations with another man by whom she had a daughter named Vicenta; that now there are two persons who call themselves Ana and Pedro Batista and claim to be the natural children of Vicenta; that they have an action pending in this court to recover a part of the estate of Batista, and that they are not Batista's grandchildren, but may be the grandchildren of Paula Rodríguez, for which reason they have an interest in this action and are necessary parties thereto. They also alleged that, abusing the good faith of her attorney, the plaintiff has been preparing false evidence in this action.

"C. As to the third count, the defendants admitted the existence of the will, as above stated, in their allegation that the plaintiffs are not the natural children of Batista.

"The defendants moved that Ana and Pedro Batista be summoned as parties to this action.

"At this stage of the pleadings the case was brought to trial.

"This is a case in which the court must act with great caution in analyzing the evidence. It is to be regretted that in the same manner that the words of the witnesses are set down in the record there can not be stamped therein, although they are well fixed in the mind of the court, the attitude, gestures and even the look in

the eyes of the witnesses, which graphically complete their testimony. A gesture, an inflection of the voice or a look may reveal and disclose in the majority of cases certain moods and possibilities and even probabilities of truth or falsity in the language; because, generally, such gestures or inflections of the voice are spontaneous and not the result of previous preparation.

"In this case there have been accusations, sometimes open and sometimes veiled, that the parties had attempted to falsify the evidence. It is almost unnecessary for the court to say that considering the clean reputations of the attorneys in the case, none of these accusations made against the litigant parties have any reference to the attorneys.

"Let us consider the evidence step by step.

"From a first group of the facts we will consider whether or not María Gil and Petronila are the children of José Manuel Batista and whether he treated them as his natural children and cared for them as such.

"Let us first state certain facts which are admitted by both parties, as follows:

"1. José Manuel Batista married Paula Rodríguez in 1870.

"2. José Manuel Batista married Julia Durán in 1917.

"3. José Manuel Batista died in January of 1918 after making a closed will on November 14, 1917, which was admitted to probate by the district court. In that will Manuel Batista Durán, the legitimated son of José Manuel Batista and Julia Durán, is acknowledged as his child and designated as his heir. The daughters of Providencia Colón were neither named nor designated as heirs.

"Regarding the proof of the amorous relations and concubinage between Batista and Providencia Colón and the consequent birth of the two girls called María Gil and Petronila, the court is of the opinion that the allegations of the complaint as to these facts have been proved in a convincing manner by the witnesses called by the plaintiff, and especially by the following:

"Dr. Acisclo Bou de la Torre testified that he had known the girls from infancy and had attended them professionally at the request of José Manuel Batista, who told him to charge his account with the visits because the girls were his daughters, saying this to the witness on several ocassions. He testified to his knowledge that Batista treated them as his daughters.

"Ramón Rivera Fuentes testified that he had known Batista and

Providencia Colón for many years and knew that they lived in concubinage under the same roof, Providencia being unmarried and this being about 1900 to 1902; that he knew the girls as the daughters of Batista and Colón; that Batista furnished them with shelter, clothing and food, paying all of their expenses and treating them as his daughters; that Batista told him that they were his daughters. The witness testified that he was an intimate friend of Batista and on cross-examination firmly maintained his previous statements.

"José Manuel Medina, an illegitimate son of José Manuel Batista, was another important witness on this point. He said that he had always lived with his father; that he knew Providencia Colón since she was a child; that from 1900 to 1902 she lived with José Manuel Batista for about a year and afterwards Batista bought for her six acres of land and built her a house where he continued to visit her; that Providencia was Batista's mistress and had two children by him, María Gil and Petronila, whom the witness knows; that witness was the godfather of Petronila at the request of José Manuel Batista, who told the witness that the witness knew the girl was his (Batista's) daughter and that he wished him (the witness) to be her godfather; that Batista lived with Providencia Colón publicly and everybody considered the girls as the daughters of Batista and the witness considers them as his sisters; that Batista provided for all of the necessities of the girls and paid all of their expenses, and in the presence of the witness himself Batista has delivered money to be given to Providencia Colón; that Batista publicly treated the girls as his daughters and always told the witness and his brothers that those girls were his daughters. On cross-examination the witness reaffirmed his statements and on being asked whether he was an enemy of Julia Durán he said that he was not and that he considered her son as his brother. The court could not find, or even presume, that the witness was testifying falsely.

"This evidence has convinced the court that María Gil and Petronila Colón are the children of José Manuel Batista and Providencia Colón, who lived in concubinage at the time of the conception and birth of these children, and that these girls were privately and publicly treated by José Manuel Batista as his daughters and as such were supported and cared for by him.

"Let us now take up the problem of the case; that is, whether at the time of the conception of these children Batista was a widower or a married man.

"Before going into the evidence on this point the court wishes to say that it finds that at the time of the conception and birth of María Gil and Petronila, Providencia Colón was unmarried and could contract matrimony. The court also finds that María Gil Colón was born on January 24, 1903, and Petronila Colón on December 18, 1906.

"The court also finds:

"That in August of the year 1899 a hurricane occurred in or swept over Porto Rico; that at that time Paula Rodríguez, the wife of José Manuel Batista, lived in the ward of Limón, Utuado, separate from her husband; that on the day of the hurricane Paula Rodríguez took refuge in the house of Francisco Domenech, where she was seen during the afternoon and it was not proved that she left the house, but on the contrary it was shown that she remained there; that on the night of August 8, 1899, when the hurricane occurred the river that runs near the house of Domenech became greatly swollen; that on that same night the house of Domenech, in which Paula Rodríguez was lodged, was swept away and destroyed by the current of the river and all of its inmates perished except a young man named Joaquín Laffossé; that after the hurricane subsided numerous corpses were found in a state of decomposition, but of the inmates of Domenech's house the only corpses found were those of a man named Demetrio and of Joaquín Massonet's mother-in-law, the wife of the owner of the house; that Batista thereafter endeavored to ascertain whether Paula Rodríguez had perished and became fully convinced that she had been drowned during that night. From the evidence as a whole the court is satisfied that Paula Rodríguez was one of the persons drowned on the night of August 8, 1899, when the house of Domenech was carried away by the river.

"At this stage of the trial the controversy reached its most strongly contested point and the court does not wish to go further without analyzing some important parts of the evidence.

"Joaquín Massanet, Pedro Rodríguez Batista and Juan Colón testified that they saw Paula Rodríguez in Domenech's house at different hours on the 8th of August, 1899, and that when some persons left the house Paula remained.

"J. Britapaja testified that some days after the hurricane Batista was inquiring whether Paula Rodríguez had been drowned and was examining the corpses of people who had been drowned during the hurricane.

"Acisclo Bou, Pedro Rodríguez Batista, Ramón Rivera Fuentes and José Manuel Medina testified that Batista told them that he was certain that Paula Rodríguez had been drowned on the day of the hurricane and that he asked some of them for information and thereafter for advice, in order to register the death of Paula and make his situation lawful.

"There was some evidence to the effect that Paula Rodríguez was seen alive after the 8th of August. One of the witnesses said that he saw Paula in the house of Amalia Colón, an aunt of the witness, a year after the hurricane and that she was searching for her daughter; and the same witness, in his direct testimony, said later that he saw Paula Rodríguez in the year 1903 or 1904. Evidence in rebuttal was produced to contradict the testimony of this witness and it was proved that he was not a relative of Amalia Colón; that she died a year after the hurricane, and that Paula Rodríguez's daughter died in the year 1900.

"Manuel Corominas testified that in 1900 he saw Paula Rodríguez in Mameyes, a ward of Utuado, and that he saw her only once at the house where the family of the witness lived. The court did not find this testimony to be possitive and firm and this testimony could not explain to the court these isolated appearances of Paula Rodríguez in different wards, far from where she lived, and presenting herself always to one or two persons who were casually at the place where she was seen. On the contrary, those who, like Batista, searched for her with deep interest never had the luck to find her nor to find any of the persons who saw her at the time and who could have informed him of her whereabouts. The court could not, and can not, believe this witness, whose testimony did not present, either in logic or in the attitude of the witness, facts convincing to the court.

"Celestino Zambrana testified that in the afternoon of the day of the hurricane Paula Rodríguez was in Domenech's house and that she was not drowned because she went to the house of Juan de los Reyes Candelario, where, on the following day, she prepared breakfast for them; that Paula went to that house at three o'clock in the afternoon. This witness also testified that he saw Paula in Arecibo a year after the hurricane and that she was alone. The court must confess that if Paula passed the night in the house of Juan de los Reyes and not in Domenech's house and prepared breakfast for the persons there while the wife of the owner of the house was there and

was logically the one called upon to prepare the breakfast and care for those who had taken refuge there, it seems strange that no others of the many persons who passed the night in the house of Juan de los Reyes have been called as witness and only a single, isolated witness is so called. The testimony to the effect that Paula Rodríguez passed the night in Domenech's house seems to the court to be stronger, more positive and more worthy of credit. It is true that Joaquín Massanet contradicted himself in stating the details; but it was necessary to hear and see this witness, who came into court ,in such a state of infirmity and so feeble that he could scarcely speak and was exposed to the errors unavoidable in a person who is under the effects of great morbid weariness. But notwithstanding this, he and Juan Colón gave sufficient evidence to rebut Zambrana's testimony, of whom Colón said that he lived about five kilometers from the house of Juan de los Reyes, stating also that Paula Rodríguez did not leave Domenech's house; that the witness was on that night in the house of Juan de los Reyes, and that in the morning the breakfast was prepared by Sandalia Batista, the wife of Juan de los Reyes. This witness said that on that occasion Zambrana was on the other side of the river, in the house of Justo Candelario, where he passed the night, and on the following day crossed the river on a raft and came to the house of Juan de los Reyes.

"About this same witness Zambrana the court has noticed that he is the only one who has said (page 125 of the stenographic record) that after the hurricane Paula Rodríguez continued to live in the same ward for five or six months. Comparing this statement with the evidence of the case as a whole, it seem to us so contrary to the truth as to discredit Zambrana's testimony.

"And on this question of suspicious testimony the court wishes to say that while from almost all of the testimony in the case it appears clearly that Batista married Paula Rodríguez by compulsion and only lived with her for a few days, José Colón testified that for a year after the marriage he frequented Batista's house and always found Paula there. If we compare this testimony with that of the persons most closely related to Batista, we will have to conclude that witness Colón did not speak the truth and that it is doubtful that he knew Paula Rodríguez.

"Let us examine the evidence as to whether or not Providencia Colón attempted to bribe certain witnesses.

"The court wishes to say here that both from the evidence and

from the appearance of Providencia Colón it may be seen that she is a woman who struggles with poverty. She is a washerwoman in a small town. This is a fact which makes us consider more carefully the charge of attempted bribery made against her. Considering the evidence of both parties, the court does not believe that Providencia Colón offered to any of the witnesses the sum of $50, which would represent to her something like a fortune, which it seems she never had, not even during her concubinage with Batista. And much less can the court believe that this woman would make such offers to persons to whom she had spoken only once or twice. If this woman presents witnesses like Dr. Bou, Medina, Pedro Rodríguez Batista and others, it is incredible that she should offer money to those who perhaps had seen nothing that she cared to prove.

"The court declares that the testimony as to the bribery is not convincing and can not be given credit in order to draw an inference against the plaintiff.

"The court finds that José Manuel Batista knew that his wife, Paula Rodríguez, perished by drowning on the night of August 8, 1899, in the river which runs through the ward of Limón; that, knowing this, he brought in this court an action for divorce wherein he falsely alleged that the said Paula Rodríguez was alive, and that he prosecuted the proceeding and obtained a decree of divorce in action No. 411 of this court in the year 1907.

"The will of José Manuel Batista was probated and it was proved that the natural children María Gil and Petronila, who are represented in this action, were not named in the said will nor assigned any share of the estate."

As all of the assignments of error made by the appellants are based on the contention that the trial court abused its discretion in weighing the evidence, we have made an examination of the evidence and have arrived at the conclusion that the court below did not commit the abuse of discretion attributed to it in adjusting the conflict in the evidence, and we agree with it on all of the points transcribed from its opinion.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Hutchison concurred.